**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CSAA Affinity Insurance Company, | No. CV-21-08041-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| AmeriGas Propane LP, et al., | |
| Defendants. | |

Before the Court is Defendants AmeriGas Propane, L.P., AmeriGas Propane GP, L.L.C., and New AmeriGas Propane, Inc.'s (collectively "Defendants") Motion to Compel Arbitration and Stay Proceedings. (Doc. 6.) For the following reasons, Defendants' Motion to Compel is denied.

## BACKGROUND

Plaintiff CSAA Affinity Insurance Company ("Plaintiff") issued and provided an insurance policy to Vincent and Carmen Kasarskis ("Insureds") for their personal property in Pinetop, Arizona. This action arises out of a water loss and resulting damage to the Insureds' property. Plaintiff alleges that Defendants caused the water loss by negligently disconnecting the Insureds' gas supply.

In March 2021, Defendants filed a Motion to Compel Arbitration and Stay Proceedings. (Doc. 6.) On May 28, 2021, the Court held an evidentiary hearing on the Motion.

In support of their motion, Defendants submitted the testimony of the Regional Director of AmeriGas, Robert Cassidy. He explained that the creation of a user account at AmeriGas required completing and signing the Company's terms of service. AmeriGas' practice is to either physically print an agreement for a customer to sign in person or email the agreement for a customer to complete remotely. Mr. Cassidy testified that AmeriGas's practice is to email or print the entire customer agreement when it is shared with prospective customers, not only portions. However, it is common that customers only return the two pages of the agreement which contain blanks for signatures or customer information, rather than the entire agreement.

On behalf of Plaintiff, Insured Vincent Kasarskis testified about his contract. In 2018, he received terms of service via email, which he completed and returned. Although Mr. Kasarskis did not have specific memory of the agreement, he explained that his practice would normally have been to return an entire agreement after signing it. AmeriGas' record contains only two pages, which do not contain an arbitration clause. Defendants admitted into evidence a copy of a blank, four-page agreement they allege was being used during the relevant period. (Doc. 8-2.) This agreement contains an arbitration clause. *Id.* The numbering at the bottom of the four pages of the admitted agreement reads: 1 of 3, 2 of 3, 3 of 3, and 4 of 4. *Id.* The numbering as the bottom of the two pages signed by Mr. Kasarskis reads: 3 of 3, and 4 of 4. (Doc. 6-2 at 6–7.)

**DISCUSSION**

**I.      Legal Standard**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113–19 (2001); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). However, "[n]otwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be

required to submit to arbitration any dispute which he has not agreed so to submit.'" *Tracer Rsch. Corp. v. Nat'l. Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, (1960)).

Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d at 1130. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)). However, a court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency." *Tracer Research Corp.*, 42 F.3d at 1294. "[T]he judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate[.]" *United Steelworkers*, 363 U.S. at 582. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. A party seeking to compel arbitration has the burden under the FAA to show both the existence of an agreement to arbitrate; and, if it exists, that the agreement to arbitrate encompasses the dispute at issue. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

When determining whether parties have agreed to arbitrate, courts apply ordinary state law principles that govern contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). To form a valid contract under Arizona law, "there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975). "Thus, a defendant seeking to compel arbitration must show that the plaintiff accepted the arbitration agreement." *Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 239 Ariz. 126, 129, 366 P.3d 1016, 1019 (Ct. App. 2016).

**II.     Analysis**

Defendants have not met their burden of establishing that the Insureds entered into

an agreement containing an arbitration clause. Although Defendants assert that the terms of service sent to the Insureds, and which Graves accepted, contained an arbitration clause per their usual practice, they have not established that the specific agreement accepted by the Insureds contained an arbitration clause. The Insured testified that, when he initially enrolled in gas services, he executed an agreement with another company, Graves, which was later acquired by AmeriGas. Although Mr. Cassidy testified about AmeriGas's policies for customer agreements, Defendants presented no evidence that their predecessor practices reflected their own.  Further, Mr. Karsarkis testified that his practice would have been to return the entire agreement after signing it, and both parties agree that only two pages were returned by the Insureds. Additionally, the four-page agreement Defendants assert the Insureds received is improperly numbered, raising questions about its completeness and accuracy. Defendants did not offer an explanation for this disparity. The Court cannot conclude, given these inconsistencies, that the Insureds would have received the presented four-page document as a general practice.

Mr. Cassidy also explained that the company's website, where customers can go to manage their account and pay bills online, contains updated terms and conditions for their customer agreements. AmeriGas invoices direct clients to these updated terms and conditions: "We periodically review and revise our standard Terms and Conditions. Visit our company website to read the T&C that apply." (Doc. 8-1 at 1.) Although Defendants assert that the website terms and conditions bind customers, they provide no legal basis for their claim that AmeriGas can unilaterally alter its contract with customers to incorporate terms and conditions on its website. Customers' obligations to AmeriGas remain the same and they are not given an opportunity to opt-out of the updated terms without discontinuing service. The Court thus cannot find that the terms were incorporated into the Insureds' agreement. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

As the two-page document with the Insured's signature does not contain an

arbitration clause, and Defendants have not established that the Insured received the four-page agreement they presented, Defendants have not established that the parties' agreement included an arbitration clause.

## CONCLUSION

For the reasons set forth above, Defendants have not established the existence of a valid agreement to arbitrate.

**IT IS THEREFORE ORDERED** that Defendants AmeriGas Propane, L.P., AmeriGas Propane GP, L.L.C., and New AmeriGas Propane, Inc.'s (collectively "Defendants") Motion to Compel Arbitration and Stay Proceedings. (Doc. 6) is **DENIED.**

Dated this 11th day of June, 2021.

_____
G. Murray Snow
Chief United States District Judge