WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CSAA Affinity Insurance Company, | No. CV-21-08041-PCT-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| AmeriGas Propane LP, et al., | |
| Defendants. | |

Before the Court is Defendants AmeriGas Propane, LP; AmeriGas Propane GP, LLC; and New AmeriGas Propane, Inc.'s (collectively "AmeriGas") Motion for Reconsideration of the Court's June 11, 2021 Order denying their Motion to Compel Arbitration and Stay Proceedings.[1] (Doc. 28; *see* Docs. 6, 16). For the following reasons, the Motion for Reconsideration will be denied.

**I.    BACKGROUND**

**A.    Complaint**

Plaintiff CSAA Affinity Insurance Company ("CSAA") issued an insurance policy to Vincent and Carmen Kasarskis ("Insureds") for personal property in their home in Pinetop, Arizona. (Doc. 1-1 at 10 ¶ 2). The pipes in the home froze and burst, causing extensive water damage to the property. (*Id.* at 13 ¶¶ 11–13). Pursuant to the policy, CSAA paid out $249,283.25 for the damage. (*Id.* ¶ 14). CSAA then filed a complaint in Navajo

---

[1]    The Order was issued by Chief District Judge G. Murray Snow who presided over the case until it was reassigned to the undersigned on August 24, 2021. (*See* Docs. 16, 26).

County Superior Court against AmeriGas, which had supplied gas to the home pursuant to a written agreement with Mr. Kasarskis, alleging it was liable for the damage under a theory of negligence. (*Id.* at 9–16). On February 24, 2021, AmeriGas removed the action to this Court. (Doc. 1).

### B. Motion to Compel Arbitration

On March 3, 2021, AmeriGas filed a Motion to Compel Arbitration and Stay Proceedings, arguing the action was subject to arbitration pursuant to its written agreement with Mr. Kasarskis. (Doc. 6). Additionally, AmeriGas alleged that terms and conditions on its website "also require[d] arbitration of any dispute arising under or related to the delivery agreement." (*Id.* at 2 n.1). In support, AmeriGas submitted two documents and a declaration from Robert Cassidy, a regional manager at AmeriGas, who spoke on its behalf. (Doc. 6-1).

Through the declaration of Robert Cassidy, AmeriGas asserted that the first document was the agreement that had been signed and returned to it by Mr. Kasarskis. (*Id.* at 3 ¶ 4; *see id.* at 5–7). This agreement consists of two pages: the first is labeled "Page 1 of 3" and has Mr. Kasarskis' contact information and the address of the Pinetop home; the second is labeled "Page 4 of 4" and has the signatures of Mr. Kasarskis and Leslie Adams, who signed on behalf of "Graves Propane," the name under which AmeriGas did business in Pinetop. (*Id.* at 6–7; *see id.* at 2 ¶ 2; Doc. 28-1 at 3 ¶ 3). Neither page contains an arbitration clause. Through Mr. Cassidy, AmeriGas asserted that the second document is the "complete" agreement that was initially sent to Mr. Kasarskis. (Doc. 6-1 at 3 ¶ 5; *see id.* at 8–12). This agreement consists of four pages: the first three pages are labeled "Page 1 of 3," "Page 2 of 3," and "Page 3 of 3," consecutively; the last page is labeled "Page 4 of 4." (*Id.* at 9–12). The page labeled "3 of 3" contains an arbitration clause. (*Id.* at 11).

In his declaration, Mr. Cassidy noted, "Because these agreements are updated from time to time and it is common to receive only signature pages back from customers, AmeriGas's agreements are labeled with a revision number on the execution page to allow [AmeriGas] to determine which specific agreement was signed by the account holder." (*Id.*

at 3 ¶ 5). The execution pages of both documents bear a revision number of 10012016. (*Id.* at 7, 12). The two pages of the first document, minus the filled-in information, are identical to the first and last pages of the second document. (*Compare id.* at 6–7 *with id.* at 9, 12).

On March 17, 2021, CSAA filed a response to the motion, arguing it should be denied because the two-page agreement executed by Mr. Kasarskis did not contain an arbitration provision. (Doc. 8). CSAA submitted a declaration from Mr. Kasarskis in which he stated that the two-page document he signed was emailed to him by AmeriGas and that he "d[id] not recall ever receiving any additional pages beyond the two pages that [he] reviewed and signed." (Doc. 8-1 at 3 ¶ 5). Mr. Kasarskis noted a box above his signature was left unchecked, which led him to believe that no additional documents were incorporated into the agreement. (*Id.* ¶ 7; *see* Doc. 6-1 at 7).

On March 24, 2021, AmeriGas filed a reply (doc. 10) and a supplemental declaration from Mr. Cassidy stating that AmeriGas's online terms and conditions contained an arbitration provision and that Mr. Kasarskis could have requested and received a copy of the complete agreement at any time (doc. 10-1).

**C.     Evidentiary Hearing**

On May 28, 2021, the Court held an evidentiary hearing at which Mr. Cassidy and Mr. Kasarskis testified. (Doc. 21).

Mr. Cassidy, testifying on behalf of AmeriGas, testified that when a customer wanted to initiate service by AmeriGas, "Typically [AmeriGas] would email the blank . . . supply agreement [to the customer], the customer would sign it and . . . send it back to us, . . . then we would sign it, and then we would start service." (*Id.* at 11). He did not know why there were only two pages of the executed agreement in the instant case. (*Id.*). However, Mr. Cassidy testified it was "fairly common that people would only send back the two pages that they signed, not the other pages that didn't have to have any markings on them in any way" and that AmeriGas had "accepted" such practices "in the past." (*Id.* at 11, 26). He testified he did not have any evidence of how many pages were actually sent to Mr. Kasarskis and that any emails regarding the agreement between Mr. Kasarskis and

AmeriGas were no longer in AmeriGas's system. (*Id.* at 25, 30). The only evidence Mr. Cassidy had of an agreement between AmeriGas and Mr. Kasarskis was the two-page document attached to his declaration. (*Id.* at 26).

Additionally, Mr. Cassidy testified that terms and conditions available on AmeriGas's website included an arbitration provision and that Mr. Kasarskis had access to these terms and conditions through his account on the website. (*Id.* at 14–15). However, Mr. Cassidy testified that nothing requires a customer to click or view these terms and conditions. (*Id.* at 15–16). Instead, customers are merely notified via their invoice that the terms and conditions are periodically updated and that they can view them on the website. (*Id.* at 16–18; *see* Doc. 8-1 at 11 ("We periodically review and revise our standard Terms & Conditions. Visit our company website to read the T&C that apply.")).

Mr. Kasarskis, the Insured, testified that AmeriGas emailed him an agreement and that his "normal practice" would have been to send back every page he received after signing it. (Doc. 21 at 38–40). However, Mr. Kasarskis was uncertain whether he did so in the instant case. (*Id.* at 40 ("But I can't swear to it 100 percent that that's, you know, I – I didn't get that. I sent them all back."), 47 ("I just don't recall what I actually received and sent back.")). He testified that to "the best of [his] knowledge," he did not deviate from his "normal practice." (*Id.* at 41). Mr. Kasarskis did not "remember any other pages except the two [he] signed." (*Id.* at 46). However, the nonsequential page numbering on the two-page document he signed "told [him] there was something missing." (*Id.* at 43). He testified that AmeriGas did not ask for any other pages after he returned the two pages to it and that he was unaware of any arbitration provision before the damage occurred. (*Id.* at 45–46, 52–53). Like Mr. Cassidy, Mr. Kasarskis was unable to produce any emails between him and AmeriGas regarding their agreement. (*Id.* at 50–51).

### D. Order Denying Motion to Compel Arbitration

On June 11, 2021, the Court issued an order denying AmeriGas's motion, stating:

> Defendants [AmeriGas] have not met their burden of establishing that the Insureds entered into an agreement containing an arbitration clause. Although Defendants assert that the terms of service sent to the Insureds, and

- 4 -

which Graves accepted, contained an arbitration clause per their usual practice, they have not established that the specific agreement accepted by the Insureds contained an arbitration clause. The Insured [Mr. Kasarskis] testified that, when he initially enrolled in gas services, he executed an agreement with another company, Graves, which was later acquired by AmeriGas. Although Mr. Cassidy testified about AmeriGas's policies for customer agreements, Defendants presented no evidence that their predecessor's practices reflected their own. Further, [Mr. Kasarskis] testified that his practice would have been to return the entire agreement after signing it, and both parties agree that only two pages were returned by the Insureds. Additionally, the four-page agreement Defendants assert the Insureds received is improperly numbered, raising questions about its completeness and accuracy. Defendants did not offer an explanation for this disparity. The Court cannot conclude, given these inconsistencies, that the Insureds would have received the presented four-page document as a general practice.

Mr. Cassidy also explained that the company's website, where customers can go to manage their account and pay bills online, contains updated terms and conditions for their customer agreements. AmeriGas invoices direct clients to these updated terms and conditions: "We periodically review and revise our standard Terms and Conditions. Visit our company website to read the T&C that apply." (Doc. 8-1 at 1.) Although Defendants assert that the website terms and conditions bind customers, they provide no legal basis for their claim that AmeriGas can unilaterally alter its contract with customers to incorporate terms and conditions on its website. Customers' obligations to AmeriGas remain the same and they are not given an opportunity to opt-out of the updated terms without discontinuing service. The Court thus cannot find that the terms were incorporated into the Insureds' agreement. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

As the two-page document with the Insured's signature does not contain an arbitration clause, and Defendants have not established that the Insured received the four-page agreement they presented, Defendants have not established that the parties' agreement included an arbitration clause.

(Doc. 16 at 3–5).

### E. Motion for Reconsideration

On December 13, 2021, AmeriGas filed the instant motion for reconsideration of

the June 11, 2021 Order pursuant to Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure ("Rules" or "Federal Rules") and Local Rule 7.2(g) of the Local Rules of Civil Procedure ("Local Rules"). (Doc. 28). With the Court's leave,[2] CSAA filed a response (doc. 30), and AmeriGas filed a reply (doc. 32). (*See* Docs. 29, 31).

## II.    LEGAL STANDARD

A motion for reconsideration of an order denying a motion to compel arbitration is governed by Local Rule 7.2(g) (authorizing motions for reconsideration of any order) and Federal Rule 60(b) (authorizing motions for relief from "a final judgment, order, or proceeding"). *See United States v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) (holding Rule 60(b) applies to "motions attacking final, appealable orders"); *Newirth by and through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 939 (9th Cir. 2019) (holding denial of a motion to compel arbitration is a "final order appealable under the Federal Arbitration Act"); *see also Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass'n of N. Cal.*, 835 F.2d 1275, 1276 n.1 (9th Cir. 1987) ("[D]ismissal of a petition to compel arbitration is appealable as a final order because it completely and finally disposes of the claim before the court."). A party may obtain relief under Rule 60(b) by showing, *inter alia*, "(1) mistake, inadvertence, surprise, or excusable neglect" or "(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). The latter is a "catch-all" provision that "should be used sparingly as an equitable remedy to prevent manifest injustice and . . . only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 941 (9th Cir. 2007) (cleaned up). Similarly, under Local Rule 7.2(g), a party must show "manifest error" or "new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

## III.   ANALYSIS

AmeriGas asserts three bases for reconsideration: (1) it has presented newly

---

[2] *See generally* LRCiv 7.2(g)(2) ("No response to a motion for reconsideration and no reply to the response may be filed unless ordered by the Court.").

discovered evidence through the declaration of its former employee, Leslie Adams, who executed the written agreement with Mr. Kasarskis; (2) the Court mistakenly found that Graves Propane was a different company than AmeriGas with different business practices; and (3) the Court mistakenly found that AmeriGas's online terms and conditions were not incorporated into the written agreement. (Doc. 28 at 4–9). For the reasons explained below, AmeriGas is not entitled to reconsideration on any of these bases.

### A. The declaration of Leslie Adams does not warrant reconsideration.

AmeriGas alleges the newly-obtained declaration of Leslie Adams presents "new (and previously unavailable) facts." (Doc. 28 at 4). In it, Mrs. Adams states she "never emailed just the first and last page of the [agreement]" and "the email attachment of the [a]greement [she] sent Mr. Kasarskis would have contained all four pages." (Doc. 28-1 at 4 ¶ 6). Additionally, she reaffirms Mr. Cassidy's statements that it "was common" for customers to only send back portions of the agreement that they were "specifically asked" to fill out and that AmeriGas did business in Pinetop under the name "Graves Propane." (*Id.* at 3 ¶ 3, 4 ¶¶ 6–7; *see* Doc. 6-1 at 2 ¶ 2, 3 ¶¶ 4–5; Doc. 21 at 11, 26).

To obtain reconsideration based on newly-discovered evidence, the movant must show "the evidence: '(1) is truly newly-discovered; (2) could not have been discovered through due diligence; and (3) is of such material and controlling nature that it demands a probable change in the outcome.'" *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F.Supp.2d 1063, 1070 (E.D. Cal. 2009) (citation omitted).

### 1. Mrs. Adams' declaration is not new evidence.

AmeriGas is not entitled to reconsideration based on Mrs. Adams' declaration because it fails to show that her declaration could not have been obtained with reasonable diligence prior to the Court ruling on its motion to compel arbitration. *See id.* ("For purposes of a motion for reconsideration, evidence is not 'new' if it . . . could have been discovered prior to the court's ruling." (citing *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987))); LRCiv 7.2(g)(1) (requiring movant to show "new facts or legal authority that could not have been brought to [the Court's] attention

earlier with reasonable diligence").

AmeriGas's sole reason for not timely presenting Mrs. Adams' declaration is that it "reasonably believed" the evidence it had presented was "sufficient." (Doc. 28 at 5). It was only "*after* the Court found this evidence insufficient" that AmeriGas decided to "focus[] on locating [Mrs. Adams]." (*Id.* (emphasis added); *see* Doc. 28-2 at ¶ 3). However, a strategic choice to not pursue certain evidence does not mean the evidence could not have been obtained with reasonable diligence. *Cf. Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("[T]he failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). AmeriGas's allegations regarding difficulty reaching Mrs. Adams *after* the Court had already denied its motion (*see* doc. 28 at 5–6; doc. 28-2) are irrelevant to why it did not seek to obtain her statements *before* the Court ruled on the motion. *See Kowalski v. Anova Food, LLC*, 958 F.Supp.2d 1147, 1157 (D.Haw. 2013) ("To support a motion for reconsideration based upon newly discovered evidence, the movant is obliged to show not only that the evidence was newly discovered or unknown, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing.").

Because AmeriGas has not shown that Mrs. Adams' declaration could not have been obtained with reasonable diligence prior to the Court's June 11, 2021 Order, her declaration is not "new" evidence warranting reconsideration. *See Coastal*, 833 F.2d at 212 ("Evidence is not 'newly discovered' . . . if it . . . could have been discovered with reasonable diligence."); *Sunburst Mins., LLC v. Emerald Copper Corp.*, 300 F.Supp.3d 1056, 1063 (D.Ariz. 2018) ("Evidence is not newly discovered if it could have been adduced during pendency of the motion at issue." (cleaned up)).

### 2. Mrs. Adams' declaration does not establish a dispositive fact.

In any event, AmeriGas is not entitled to reconsideration on the basis of Mrs. Adams' declaration because her declaration does not establish any dispositive fact that would have changed the Court's ruling. *See Coastal*, 833 F.2d at 211 ("[N]ewly discovered evidence must be of such magnitude that production of it earlier would have been likely to

change the disposition of the case."). In large part, Mrs. Adams' declaration is merely a reiteration of Mr. Cassidy's statements as to AmeriGas's general practices regarding customer agreements. (*Compare* Doc. 28-1 *with* Docs. 6-1, Doc. 21 at 6–32). Her assertion that, consistent with those practices, her email to Mr. Kasarskis "would have" contained the complete four-page agreement is not proof it actually did. Moreover, there is no evidence in the record to corroborate this assertion, *e.g.*, a copy of the actual email. Because the timely presentation of Mrs. Adams' declaration would not have changed the outcome, her declaration does not warrant reconsideration. *See id.*

### B.   The identity of Graves Propane was not a dispositive fact.

AmeriGas alleges the denial of its motion to compel arbitration was "predicated on [a] misapprehension that Graves Propane was a separate company from AmeriGas with different business practices." (Doc. 28 at 6). In relevant part, the Court stated:

> The Insured [Mr. Kasarskis] testified that, when he initially enrolled in gas services, he executed an agreement with another company, Graves, which was later acquired by AmeriGas. Although Mr. Cassidy testified about AmeriGas's policies for customer agreements, Defendants presented no evidence that their predecessor's practices reflected their own.

(Doc. 16 at 4). AmeriGas is not entitled to reconsideration on this basis because the Court's findings were not clearly erroneous and the statements from Mrs. Adams, who signed the agreement on behalf of "Graves Propane," indicate that her practices were consistent with the practices testified to by Mr. Cassidy.

The record contains conflicting statements as to the identity of "Graves Propane." Mr. Cassidy stated that "Graves Propane" was simply the name AmeriGas did business under in Pinetop when Mr. Kasarskis and Mrs. Adams executed the written agreement. (Doc. 6-1 at 2 ¶ 2). However, Mr. Kasarskis testified he believed Graves Propane had been "purchased by AmeriGas" after he signed the agreement. (Doc. 21 at 38). Because the record contained conflicting evidence, the Court's findings, which were supported by the statements of at least one witness, were not clearly erroneous. *See United States v. Torlai*, 728 F.3d 932, 937 (9th Cir. 2013) ("[W]here there are two permissible views of the

evidence, the factfinder's choice between them cannot be clearly erroneous." (internal quotations and citation omitted)).

Moreover, Mrs. Adams, who signed the agreement on behalf of "Graves Propane," confirmed her practices, as an agent of "Graves Propane," were consistent with those testified to by Mr. Cassidy. (*Compare* Doc. 28-1 at 4 ¶¶ 4–6 *with* Doc. 21 at 7–11). As discussed in the previous section, however, mere statements as to what the general practices of AmeriGas (or "Graves Propane") were do not establish that those practices were actually implemented with respect to Mr. Kasarskis. Statements as to what *would* or *could* have occurred, based on general practices, do not establish what *actually* occurred. Because the identity of "Graves Propane" was only relevant to the extent that its practices were consistent with those testified to by Mr. Cassidy, and because those practices do not actually establish any dispositive fact here, the identity of Graves Propane was not itself a dispositive fact.

### C. AmeriGas does not provide any legal authority supporting its claim that its online terms and conditions were incorporated into the agreement.

AmeriGas alleges the denial of its motion to compel arbitration was "predicated on [a] misapprehension that AmeriGas's [online] terms and conditions were not incorporated into the [agreement executed by Mr. Kasarskis]." (Doc. 28 at 8). In rejecting AmeriGas's claims, the Court stated:

> Although Defendants assert that the website terms and conditions bind customers, they provide no legal basis for their claim that AmeriGas can unilaterally alter its contract with customers to incorporate terms and conditions on its website. Customers' obligations to AmeriGas remain the same and they are not given an opportunity to opt-out of the updated terms without discontinuing service. The Court thus cannot find that the terms were incorporated into the Insureds' agreement.

(Doc. 16 at 4).

AmeriGas is not entitled to reconsideration on this basis because it (still) has not presented any legal authority supporting its claim that terms and conditions on its website were incorporated into its written agreement with Mr. Kasarskis and therefore binding on

him. In the absence of such, the Court finds no basis for reconsideration. *See Mateo v. M/S KISO*, 805 F.Supp. 761, 786 (N.D. Cal. 1991) ("To succeed on . . . a motion to reconsider, a party 'must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" (citation omitted)); *see also* LRCiv 7.2(g)(1) (requiring movant to "point out *with specificity* the matters [it] believes were overlooked or misapprehended by the Court" (emphasis added)).

Instead, AmeriGas presents—for the first time—an alternative theory of incorporation based on constructive knowledge, alleging that "constructive, if not actual, knowledge of the arbitration agreement . . . is sufficient on its own to enforce the arbitration provision" and that evidence and testimony showed the Insureds had, at least, constructive knowledge of the arbitration agreement. (Doc. 28 at 8–9). Because AmeriGas did not present this particular theory in its motion to compel arbitration (*see* doc. 6), the Court does not consider it here. *See Daul v. PPM Energy, Inc.*, 267 F.R.D. 641, 651 (D.Or. 2010) ("[On a motion for reconsideration,] the parties are limited to the arguments previously made and addressed by the court."); *Garber v. Embry-Riddle Aeronautical Univ.*, 259 F.Supp.2d 979, 982 (D.Ariz. 2003) ("[N]ew arguments and new legal theories that could have been made at the time of the original motion may not be offered in a motion for reconsideration."). Accordingly, AmeriGas fails to show reconsideration is warranted on this issue.

## IV. CONCLUSION

Because AmeriGas has not shown a sufficient basis for reconsideration of the June 11, 2021 Order (doc. 16),

**IT IS ORDERED** that the Motion for Reconsideration (doc. 28) is **DENIED**.

Dated this 9th day of February, 2022.

Honorable Michael T. Morrissey
United States Magistrate Judge