**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CSAA Affinity Insurance Company, | No. CV-21-08041-PCT-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Amerigas Propane LP, et al., | |
| Defendants. | |

Pending before the Court is Defendants AmeriGas Propane, L.P., AmeriGas Propane GP, LLC, and New AmeriGas Propane Inc., (collectively "AmeriGas") Motion for Summary Judgment. Doc. 48. The Court has considered the Motion (doc. 48), Response (doc. 51), and Reply (doc. 55), and the corresponding separate Statements of Facts and Evidence (docs. 49, 52, 54). For the following reasons, Defendant AmeriGas's Motion for Summary Judgment is granted.

**I.      Background**

Plaintiff CSAA Affinity Insurance Company ("CSAA") is the insurance carrier for Vincent and Carmen Kasarskis ("Kasarskis"). Doc. 1-1 at 10. In April 2018, AmeriGas contracted with the Kasarskis to provide propane to the Kasarskis' vacation home in Pinetop, Arizona. Doc. 49 at 2; Doc. 49-1 at 30-31; Doc. 54 at 2. The contract, titled "Residential Propane Supply Agreement & Equipment Lease" ("Contract"), obligated AmeriGas to make automatic, periodic deliveries of propane to the Kasarskis' vacation home as described below:

> Automatic – Under this delivery option, the Company will make periodic deliveries to you on either a fixed cycle basis or based upon a number of forecasting factors, including temperature conditions and your specific usage patterns. To ensure accurate forecasting, we request that you update the Company with any changes in your usage or appliances.

Doc. 49-1 at 30-31; Doc. 54 at 4.

As specified, the periodic deliveries of propane would be made "either on a fixed cycle basis or based upon a number of forecasting factors, including temperature conditions and [the Kasarskis'] specific usage patterns." Doc. 49-1 at 30. To ensure accurate forecasting, the Kasarskis were required to "update [AmeriGas] with any changes in [the Kasarskis'] usage or appliances." Doc. 49-1 at 30. In addition to the automatic deliveries, the Contract also provided the Kasarskis could request propane delivery as needed. Doc. 49-1 at 30.

After entering the Contract, AmeriGas visited the Kasarskis' home and evaluated the Kasarskis' appliances, including their water heater. Doc. 49-1, Ex. C at 96-97. Approximately two months later, the Kasarskis bought a new, larger water heater but did not inform AmeriGas. Doc. 49-1 Ex. C at 37-38. At some point, the Kasarskis were instructed by AmeriGas to set the thermostat at 45 degrees when they were not at home. Doc. 49-1, Ex. C at 41. Despite this, the Kasarskis set the thermostat at 55 degrees when they were not at home. Doc. 49-1 at 42.

Between December 26, 2018, and January 4, 2019, the temperature in Pinetop was below freezing. Doc. 49-1, Ex. E at 72-73. When AmeriGas delivered propane to the Kasarskis on January 4, 2019, the propane tank was empty, and the Kasarskis were not at home. Doc. 49-1, Ex. E at 68. The AmeriGas driver filled the tank and "locked off" the tank to prevent gas from entering the house in case of an internal gas leak.[1] Doc. 49-1, Ex. E at 74-75. Defendant AmeriGas contends that it left a "service ticket" on the Kasarskis' propane tank indicating that AmeriGas "found the [Kasarskis'] tank empty when [AmeriGas] delivered the gas," and that a "leak check [was] pending." Doc. 49-1,

---

[1] Plaintiff CSAA does not dispute that locking off the tank was appropriate under the circumstances. Doc. 49 at 4; Doc. 52 at 3.

Ex. F at 82. Plaintiff CSAA disputes that AmeriGas left a service ticket on the tank or anywhere on the Kasarskis' property. Doc. 51 at 6. However, Plaintiff's own expert, David Komm, admitted at his deposition that there was evidence that AmeriGas left a service ticket on the propane tank. Doc. 49-1, Ex. E at 75. Mr. Komm also noted in his expert report that a "red tag" was left at the propane tank. Doc. 54-8, Ex. 8 at 26. AmeriGas did not otherwise contact the Kasarskis to inform them of the lock out. Doc. 54-7, Ex. 7 at 24.

On January 7, 2019, Ponderosa Water Company informed the Kasarskis of a water leak on the property. Doc. 54-7, Ex. 7 at 18. The leak was caused by multiple water pipes that had broken upon freezing. Doc. 49-1, Ex. E at 73-74. The Kasarskis' home and personal property was damaged significantly. Doc. 54-11, Ex. 11. Plaintiff CSAA paid the Kasarskis' claim and sought subrogation from Defendant AmeriGas asserting a claim for negligence. Doc. 1-1 at 9-16.

Defendant AmeriGas now moves for summary judgment on Plaintiff CSAA's claim for negligence. Doc. 48.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

1  The burden then shifts to the non-movant to establish the existence of material factual
2  issues that "can be resolved only by a finder of fact because they may reasonably be
3  resolved in favor of either party." *Anderson*, 477 U.S. at 250. The non-movant "must do
4  more than simply show that there is some metaphysical doubt as to the material facts[,]"
5  and instead "come forward with specific facts showing that there is a genuine issue for
6  trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)
7  (internal quotation and citation omitted).

**III. Discussion**

1. *Economic Loss Doctrine*

As an initial matter, the Court is not persuaded by AmeriGas's argument that Plaintiff CSAA's negligence claim fails as a matter of law because of the economic loss doctrine. Doc. 48 at 4.

The Arizona Supreme Court has referred to the economic loss doctrine as a "common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 323 (Ariz. 2010). The primary function of the doctrine is "to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *Id.* at 327.

"Although some courts apply the doctrine to generally bar tort recovery of purely pecuniary losses, Arizona takes a *narrower* approach." *Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 345 (Ariz. 2013) (emphasis added). Indeed, the Arizona Supreme Court has only ever held the doctrine to apply in two areas: construction defects and strict products liability. *See Flagstaff*, 223 Ariz. 320. In its most recent ruling in 2013, the Arizona Supreme Court expressly declined to extend the doctrine. *See Sullivan*, 232 Ariz. at 346.

"Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). "[A]bsent controlling authority, federal

courts look to existing state law" but refrain from "predicting potential changes" in that law. *Id.*

None of the claims in the Complaint fall under the umbrella of products liability or construction defects and Defendants do not point to any Arizona Supreme Court case that has applied the economic loss doctrine to a claim for negligence. Doc. 48. Ultimately, the Court is guided by the Arizona Supreme Court's pronouncement in *Flagstaff* that its decision in that case did "not suggest that the doctrine should be applied with a broad brush in other circumstances." 223 Ariz. at 329. The Court declines to expand the scope of the economic loss rule beyond the two distinct areas found in Arizona case law and thus will not apply it to bar Plaintiff's tort claims. *See id*. Defendant AmeriGas's Motion for Summary Judgment is denied as to this theory.

2. *Negligence Claim*

To prevail on a negligence claim, the plaintiff must prove: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563-64 (2018).

Whether a duty exists is a matter of law for the court to decide. *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). "[A]bsent some duty, an action for negligence cannot be maintained." *Id.* In Arizona, a duty arises either from a "recognized common law special relationship" or "relationships created by public policy." *Quiroz*, 243 Ariz. at 565. "Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Id.* (quoting *Gipson*, 214 Ariz. at 145).

A. *The Contract*

Defendant AmeriGas argues that the only duties owed by AmeriGas to the Kasarskis were set by the Contract and that AmeriGas fully complied with those duties. Doc. 48 at 5-6.

When the subject of a negligence claim is governed by contract, the terms of the

contract establish the scope of the duty. *Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 339 (Ct. App. 2010). Under the Contract, AmeriGas agreed to periodically refill the Kasarskis' propane tank according to its internal algorithm, which was "based upon a number of forecasting factors, including temperature conditions and [the Kasarskis'] specific usage patterns." Doc. 49-1 at 30. The Contract did not include a term requiring AmeriGas to refill the Kasarskis' propane tank *before* it ran out of propane or to monitor the level of the propane tank. Doc. 49-1 at 30; Doc. 49-1, Ex. E at 69-70. Further, the Contract did not require AmeriGas to notify the Kasarskis in the event the propane tank was empty or upon a "lock out." Doc. 49-1, Ex. E at 76.

Plaintiff CSAA argues that because the Contract required Defendant AmeriGas to provide periodic deliveries, it was required to ensure that the tank was never empty. Doc. 51 at 12-13. Plaintiff does not point to any provision in the Contract that required AmeriGas to ensure the tank was never empty. Doc. 51 at 12. In fact, Plaintiff's own expert, David Komm, testified at his deposition that the Contract did not require AmeriGas to ensure the Kasarskis' tank was never empty. Doc. 49-1, Ex. E at 76. Instead, Plaintiff directs the Court's attention to a "print-out" from AmeriGas's website, taken in November of 2022, that indicates the automatic or periodic deliveries "ensure[] that [the customer] won't run out of gas." Doc. 54-4, Ex. 4 at 1. AmeriGas objects to the admission of this exhibit. Doc. 55 at 5.

The Contract between the Kasarskis and AmeriGas determines the "boundaries of [AmeriGas's] potential liability," and the Court will not read an obligation into the contract "beyond the contractually agreed upon services." *See Diaz*, 224 Ariz. at 339. Additionally, because the website print-out is from 2022, as opposed to the relevant time periods in 2018 and 2019, and because Plaintiff has not attempted to show that this information was on AmeriGas's website at the time the Kasarskis contracted with AmeriGas, the Court finds that the November 2022 print out from AmeriGas's website is not probative of any relevant fact. *See Mycoskie, LLC v. Ebuys, Inc.*, 293 F. Supp. 3d 1076, 1084 (C.D. Cal. 2017) (granting summary judgment after excluding website

printouts dated before and after the parties' agreement).

Plaintiff also points to the service ticket that AmeriGas contends it left on the propane tank as evidence that AmeriGas "assumed a duty of care as it relates to how to notify customers of an out-of-gas situation." Doc. 51 at 13. Plaintiff contends that AmeriGas should have put the service ticket on the door as well as on the tank, and that AmeriGas should have checked the following box on the service ticket: "We interrupted your gas service. Call the number below to resume service." Doc. 51 at 13-14. Assuming, *arguendo*, AmeriGas failed to put the service ticket on the Kasarskis' door and failed to check the box directing the Kasarskis to call AmeriGas, Plaintiff does not provide any legal authority demonstrating that AmeriGas was under a legal duty to complete either action. Doc. 51 at 13-14. Because the Contract does not include a term requiring AmeriGas to notify the Kasarskis upon finding the tank empty, the Court will not expand the "boundaries of [AmeriGas's] potential liability." *See Diaz*, 224 Ariz. at 339.

Lastly, Plaintiff CSAA argues that AmeriGas breached a duty by refilling the tank "11 days" after the Kasarskis' refill request on December 24, 2018. Doc. 51 at 13. Plaintiff contends the Contract required AmeriGas to deliver propane within 5-7 business days after a customer request, and that the January 4, 2019, delivery was late. Doc. 51 at 13. Plaintiff, however, admits elsewhere in its Response and its own Statement of Facts, that the delivery occurred within "7 business days." Doc. 51 at 5; Doc. 54 at 7. Accordingly, Plaintiff has not set forth any facts demonstrating that the delivery on January 4, 2019, was late or that AmeriGas violated any duty under the Contract.

B. *National Fire Protection Association Guidelines*

Plaintiff argues that AmeriGas "assumed a duty under [the National Fire Protection Association Guidelines, also known as the 'National Fuel Gas Code' or 'NFPA 54']" to notify the Kasarskis of an empty propane tank. Doc. 51 at 13. Plaintiff again points to a "print-out" from AmeriGas's website, taken in November of 2022, indicating that AmeriGas follows the NFPA 54 guidelines. Doc. 54-9, Ex. 9 at 4-8. Plaintiff alleges that under the National Fuel Gas Code, subsection 4.2.1, "Notification of

Interrupted Service," AmeriGas had a duty "to notify all affected users." Doc. 54-8. Ex. 8 at 14. As previously noted, because the website print-out is from 2022, as opposed to the relevant time periods in 2018 and 2019, and because Plaintiff has not even attempted to show that AmeriGas had adopted these guidelines at the time the Kasarskis contracted with AmeriGas, the 2022 website print-out is not probative of any fact. *See Mycoskie, LLC*, 293 F. Supp. 3d at 1084.

Although Plaintiff's expert, David Komm, noted in his expert report and testified at deposition that the "NFPA guides provide the basis for appropriate actions by the propone supplier" and "represent the best practices and knowledge in the field" (doc. 54-8, Ex. 8 at 13-14; doc. 54-10, Ex. 10 at 10-11), a "[s]tandard industry practice addresses primarily whether there has been a breach of duty," and not whether a duty exists. *Diaz*, 224 Ariz. at 341; *see also Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 603 (Ct. App. 2013) (noting that standard industry practice addressed whether a breach had occurred, rather than whether a duty existed). As such, any potential breach of the industry standard does not itself impose a duty on AmeriGas. *See Ferring v. Bank of Am. NA*, No. CV-15-01168-PHX-GMS, 2016 WL 407315, at *5 (D. Ariz. Feb. 3, 2016) (finding that defendant's breach of the industry standard did not create a duty).

### IV. Conclusion

Neither the Contract nor the NFPA created the duties Plaintiff alleges existed between the parties. "[A]bsent some duty, [Plaintiff's] action for negligence cannot be maintained." *See Gipson*, 214 Ariz. at 143. Accordingly, the Court will grant Defendant AmeriGas's Motion for Summary Judgment in its entirety and dismiss this action.

Accordingly,

**IT IS HEREBY ORDERED** Defendant AmeriGas's Motion for Summary Judgment (doc. 48) is **granted**. Defendant AmeriGas's Motion in Limine to Exclude Plaintiff's Expert Witness David Komm (doc. 50) is **denied as moot**. The Clerk of the Court shall enter judgment in Defendant AmeriGas's favor and terminate this matter.

Dated this 29th day of March, 2023.

Honorable Michael T. Morrissey
United States Magistrate Judge

- 8 -